UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
SIMON GORIS,

                Plaintiff,        **MEMORANDUM AND ORDER**
                                      04-CV-5666(KAM)(LB)

    -against-


DENNIS BRESLIN, et al.,

                Defendants.
------------------------------------X

**MATSUMOTO, United States District Judge:**

       Pending before the court is a motion for summary judgment by the defendant Public Administrator of Suffolk County as the Administrator of the Estate of Francois Thebaud, M.D., ("the Public Administrator" or "defendant"). Plaintiff Simon Goris ("Goris" or "plaintiff") commenced the pending action against Dr. Francois Thebaud ("Dr. Thebaud") pursuant to 42 U.S.C. § 1983 seeking monetary relief for alleged deliberate indifference to his serious medical needs in violation of the Eighth Amendment while plaintiff was incarcerated at Arthur Kill Correctional Facility ("Arthur Kill") between February 2003 and August 2004. On August 25, 2008, Dr. Thebaud passed away and, on March 25, 2009, the Public Administrator was substituted for Dr. Thebaud.

       Defendant has moved for summary judgment, arguing that: 1) Plaintiff does not suffer from an objectively serious

medical condition and cannot demonstrate that Dr. Thebaud acted with deliberate indifference; and 2) Dr. Thebaud is protected by qualified immunity. (Doc. No. 133, Def.'s Mem of Law in Supp. of Mot. for Summary Judgment at 8-18.) Plaintiff argues that the numerous issues of fact surrounding Dr. Thebaud's liability preclude summary judgment. (See generally, Doc. No. 135, Pl.'s Mem. of Law in Opp'n.) For the following reasons, defendant's motion for summary judgment is granted.

## BACKGROUND

### I.  Procedural History

Plaintiff commenced this action pro se on December 20, 2004, against defendants Dennis Breslin, Francois Thebaud, M.D., Gail Buswell, R.N., Syed Haider-Shah, M.D., and Lester Wright, M.D., alleging that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Upon defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), (6), and (3), Judge Amon dismissed plaintiff's claim against defendant Dennis Breslin, the Superintendant of Arthur Kill Correctional Facility, in an order dated May 10, 2006. Discovery proceeded with the remaining defendants.

On October 30, 2007, plaintiff obtained pro bono counsel. Discovery closed on June 30, 2008. Co-defendants Buswell, Haider-Shah and Wright filed a motion for summary

judgment on October 27, 2008, which the court granted on July 6, 2009.

On August 25, 2008, Dr. Thebaud passed away. On March 25, 2009, upon a motion by plaintiff, the Public Administrator was substituted for Dr. Thebaud. On June 26, 2009, the State filed a motion for summary judgment on behalf of the Public Administrator. For the following reasons, the Public Administrator's motion is granted.

## II. Undisputed Material Facts

### A. Plaintiff's Knee Injury and Subsequent Treatment

Based on the plaintiff's medical records from the Department of Corrections ("DOC") submitted by plaintiff and defendants, the court finds the undisputed material facts to be as follows.[1]

---

[1] The court notes plaintiff's objection to the admission of the declaration of defendant's now deceased expert, Dr. Edward Habermann, on which defendant relies in its Rule 56.1 Statement of Undisputed Material Facts. Because the court relies on the medical records themselves in deciding this motion, and does not rely on Dr. Habermann's declaration, the court need not reach the admissibility of Dr. Habermann's declaration. Plaintiff's DOC medical records may be admissible under the business records exception to the hearsay rule, provided that such records are "kept in the course of regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation." Fed. R. Evid. 802. Neither party has supplied an affidavit containing facts supporting admissibility of the plaintiff's medical records, nor have the records been certified in a manner compliant with Fed. R. Evid. 902(11); therefore, the records are not technically admissible. Nevertheless, the court considers

Plaintiff was formerly an inmate in the custody of the New York State Department of Correctional Services. On February 9, 2003, while playing basketball at the Arthur Kill, plaintiff sustained an injury to his right knee. (Doc. No. 110, Oct. 14, 2008 Castiglione Declaration ("10/14/08 Castiglione Decl."), Ex. 1, Ambulatory Health Records of Simon Goris (collectively, "Ambulatory Health Records") at D024.)

Dr. Thebaud examined plaintiff on February 11, 2003 and noted swelling and tenderness of his right knee, and ordered an x-ray of plaintiff's knee. (Id.) The x-ray, taken on February 13, 2003, was negative and plaintiff was so informed on March 6, 2003. (Id.; 10/14/08 Castiglione Decl., Ex. 3, 2/13/03 Staten Island University Hospital X-Ray Examination Report at 1;

---

the medical records because the plaintiff relies on the records in support of his claims and in his opposition to the motion for summary judgment. See Atkinson v. Fischer, No. 07-CV-00368, 2009 WL 3165544, at *3 n.1 (N.D.N.Y. Sept. 25, 2009) (Report and Recommendation)(although lack of authentication rendered medical and grievance records "not technically admissible," court considered the records when granting defendants' motion for summary judgment "because Plaintiff relied on many of the same records in his complaint and in his opposition to the motion for summary judgment"); Sheils v. Flynn, No. 06-CV-0407, 2009 WL 2868215, at *2 n.2 (N.D.N.Y. Sept. 2, 2009) (Report and Recommendation) (although court found that lack of authentication rendered medical records attached as exhibits to affidavits "not technically admissible," the court considered the records on defendants' motion for summary judgment "because Plaintiff also relied on the records in his opposition to the motion for summary judgment"). The parties are cautioned that medical records should be properly authenticated and accompanied by an affidavit or certification that complies with Fed. R. Evid. 803.

Doc. No. 136, June 18, 2009 Castiglione Declaration ("6/18/09 Castiglione Decl."), Ex. 1, 3/28/08 Deposition of Dr. Thebaud ("Thebaud Dep.") at 80.) Dr. Thebaud gave plaintiff pain medication and an Ace Bandage. (Thebaud Dep. at 81.) Dr. Thebaud saw plaintiff on March 14, 2003 to discuss his cholesterol but there is no indication that plaintiff discussed his knee. (Ambulatory Health Records at D025.)

On April 7, 2003, after noting that plaintiff continued to have swelling, buckling and pain in his right knee, Dr. Thebaud ordered an orthopedic consultation for plaintiff at Staten Island University Hospital. (Id. at D026; 10/14/08 Castiglione Decl., Ex. 2, Requests and Reports of Consultation of Simon Goris ("Consultation Reports") at D139.) Plaintiff did not make any complaint regarding his knee during visits with a nurse on April 17 or on April 29, 2003. (Ambulatory Health Records at D026.) Plaintiff saw an orthopedic consultant on May 14, 2003, who recommended physical therapy and an MRI of the right knee. (Id. at D027; Consultation Reports at D139.) Based on this recommendation, on May 15, 2003, Dr. Thebaud ordered a physical therapy consultation and an MRI. (Consultation Reports at D140-D141.) On June 5, 2003, the physical therapist recommended physical therapy twice a week for an unspecified period. (Id. at D140.) On June 12, 2003, Dr. Thebaud ordered another physical therapy consultation. (Id. at D142-D143.)

Plaintiff had physical therapy in June and July of 2003. (Id. at D140-D145.)

On June 16, 2003, an MRI was performed on plaintiff's right knee, which suggested an anterior cruciate ligament ("ACL") tear. (Id. at D141; 10/14/08 Castiglione Decl., Ex. 4, 6/18/03 Staten Island University Hospital MRI Report for Simon Goris ("MRI Report") at 1-2.) The MRI also diagnosed an oblique tear of the medial meniscus involving the body and posterior horn, mild to moderate degenerative changes (arthritis) manifested by joint space narrowing and osteophyte formation, and other intact ligaments and tendons. (MRI Report at 1-2.)

On July 3, 2003, referencing the MRI results, Dr. Thebaud referred plaintiff for an orthopedic consultation. (Ambulatory Health Records at D033; Consultation Reports at D144.) On July 23, 2003, plaintiff was seen by an orthopedist who noted that plaintiff reported that his right knee pain and instability were "unimproved" since his last visit. (Consultation Reports at D144.) The orthopedist further noted that plaintiff reported pain on flexion of his right knee and prescribed continuing physical therapy and directed that plaintiff not engage in prolonged activity with the right knee. (Id.) The orthopedic surgeon recommended plaintiff return to an orthopedist in three weeks. (Id.)

On August 5, 2003, Dr. Thebaud referred plaintiff for a follow-up consultation with an orthopedist, as recommended during the July 23, 2003 orthopedic visit. (Id. at D146.) Plaintiff saw an orthopedist on September 17, 2003, who again recommended physical therapy, anti-inflammatory pain medication and a return visit as needed ("prn"). (Id.) Thereafter, Dr. Thebaud again referred plaintiff for physical therapy on September 18, 2003, November 6, 2003 and March 16, 2004, which plaintiff received during that period through April 2004. (Id. at D147, D149-D155.)

Plaintiff's physical therapy records note that plaintiff occasionally complained of knee pain and also reported a reduction of knee pain and buckling to the physical therapist. (Id. at D140, D142-D143, D149-D155.) For example, on January 14, 2004, plaintiff reported to his physical therapist that his knee buckled less since he started physical therapy; on January 21, 2004, that his knee felt a little better and stronger and that he did not have buckling of the knee; and on January 26, 2004, that his knee felt stronger and did not buckle as much. (Id. at D150-D152.) On January 28 and February 2, 2004, plaintiff reported to his physical therapist that his knee pain increased with snow and cold weather but his knee was not buckling. (Id. at D153-D154.)

On March 16, 2004, plaintiff reported to Dr. Thebaud that he was doing better with physical therapy and was given an ace bandage and referred for more physical therapy. (Ambulatory Health Records at D044; Consultation Reports at D155.) Dr. Thebaud's referral of March 16, 2004 noted that plaintiff had "good improvement, increase of strength, decrease of pain," and that he would improve with more therapy. (Consultation Reports at D155.) The subsequent physical therapy report dated April 14, 2004 notes that plaintiff's right knee had not buckled over the last month, but that it felt a "little unstable," with pain and tenderness on the lateral aspect, and that plaintiff was unable to run and jump. (Id.)

Plaintiff was seen by a registered nurse on May 14, 2004, who noted that physical therapy "be continued," provided plaintiff with a limited activity note, and recommended a follow-up medical appointment. (Ambulatory Health Records at D047.) Plaintiff returned on May 18, 2004 to have his restricted activity note verified and extended until June 1, 2004. (Id. at D046.) On June 7, 2004, plaintiff requested physical therapy, and the nurse scheduled a medical appointment for June 28, 2004. (Id.) The Ambulatory Health Records indicate that a medical doctor was not in the office on June 28, 2004, and, accordingly, plaintiff's appointment was rescheduled for July 19, 2004. (Id.) On July 2, 2004, plaintiff requested

an appointment to see Dr. Thebaud before July 19, 2004. (Id. at D048.)  Plaintiff was offered the option of seeing another doctor, Dr. Davis, that same day, but plaintiff refused that appointment.  (Id.)  Plaintiff saw Dr. Thebaud three days later on July 5, 2004, where the results of his cholesterol test and diet were discussed.  (Id.)

On July 19, 2004, plaintiff returned to see Dr. Thebaud and complained of right knee pain following two physical therapy sessions.  (Id.)  On this date, Dr. Thebaud again referred plaintiff for an orthopedic consultation and again forwarded a copy of the MRI to the consultant, stating "pt has had PT on 2 occasions but still [complains] of pain of rt knee. Please see.  Sent copy of MRI." (Consultation Reports at D156; see also Ambulatory Health Records at D048.)  The orthopedic consultation was scheduled for August 11, 2004.  (Consultation Reports at D156.)

On July 31, 2004, plaintiff was examined by a nurse in the Segregated Housing Unit ("SHU") who noted no marks, abrasions or swollen areas.  (Ambulatory Health Records at D049.)  Plaintiff did not attend the August 11, 2004 orthopedic consultation.  (Consultation Reports at D156; Doc. No. 133, 9/10/08 Declaration of Dr. Haider-Shah ("Haider-Shah Decl.") at ¶ 9.)  Plaintiff's medical chart was reviewed for transfer on August 12, 2004.  (Ambulatory Health Records at D049.)

On August 13, 2004, plaintiff was transferred from Arthur Kill to Downstate Correctional Facility, then to Ulster Correctional Facility, and finally, on August 17, 2004, to Marcy Correctional Facility ("Marcy"). (Haider-Shah Decl. at ¶ 7, Ex. A at 1-2.)[2]. From the medical records, it does not appear that plaintiff saw Dr. Thebaud after July 19, 2004.

## B. Plaintiff's Expert Opinion

Plaintiff's expert, Dr. Andrew D. Pearle, concedes that plaintiff "received appropriate care from February 2003 until . . . February 2004." (10/14/08 Castiglione Decl., Ex. 10, 4/14/08 Report of Pl.'s Expert Dr. Andrew Pearle (collectively, "Pearle Report") at 4.) However, Dr. Pearle opined that, "after Mr. Goris's initial improvement with physical therapy in February 2004", "orthopedic follow-up should have occurred in a more expeditious manner", and specifically that, after this point, Dr. Thebaud "did not follow the Orthopedic recommendations of following up with the Orthopedic clinic prn." (Id. at 4-5.) He also opined that, in his practice, "if a patient has persistent complaints of pain after physical therapy for 4 weeks in the setting of a meniscal and ACL tear, I would order more physical therapy and/or recommend surgical intervention." (Id. at 4.) Dr. Pearle concluded,

---

[2] The DOC doctors do not make decisions to transfer inmates among DOC facilities. (Haider-Shah Decl. at ¶ 8.)

"[i]n the setting of defined Orthopedic pathology and a failure

of physical therapy to provide relief, Orthopedic re-

consultation should have occurred within a couple of weeks to

one month after the persistence of symptoms."  (Id. at 5.)

**DISCUSSION**

**I.  Summary Judgment Standard**

A court may grant summary judgment only "if the

pleadings, the discovery and disclosure materials on file, and

any affidavits, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The

moving party carries the burden of demonstrating the absence of

a genuine issue of material fact.  Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986).  In deciding a motion for summary

judgment, the court's function is not to resolve disputed issues

of fact, but only to determine whether there is a genuine issue

to be tried.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249

(1986).  The court must construe the facts in the light most

favorable to the nonmoving party and all reasonable inferences

and ambiguities must be resolved against the moving party.

Flanigan v. Gen. Elec. Co., 242 F.3d 78, 83 (2d Cir. 2001).

Nevertheless, the nonmoving party cannot rest on "mere

allegations or denials" but must instead "set out specific facts

showing a genuine issue for trial."  Fed. R. Civ. P. 56(e); see

11

also <u>Nat'l Westminster Bank USA v. Ross</u>, 676 F. Supp. 48, 51 (S.D.N.Y. 1987) ("Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact."); <u>Harlen Assocs. v. Incorporated Vill. of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture is insufficient to preclude the granting of the motion.").

Nor can the nonmoving party rest only on the pleadings. <u>Celotex</u>, 477 U.S. at 324 (Fed. R. Civ. P. 56(e) "requires the nonmoving party to go beyond the pleadings"); <u>Davis v. New York</u>, 316 F.3d 93, 100 (2d Cir. 2002). Instead, each statement of material fact by the movant or opponent must be followed by citation to evidence which would be admissible, as required by Federal Rule of Civil Procedure 56(e) and Local Civil Rule 56.1(d). Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson</u>, 477 U.S. at 247-48 (emphasis in original). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-50 (internal citations omitted).

## II.   Section 1983 and Eighth Amendment Claim for Deliberate Indifference to Serious Medical Needs

### A. Legal Standard

To prevail in a section 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under the color of state law.  See 42 U.S.C. § 1983.  In order to establish an Eighth Amendment violation based on a claim that a prison official provided inadequate medical treatment, a plaintiff must prove "deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The deliberate indifference standard requires an inmate to meet both an objective and subjective prong.  See, e.g., Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999).

Under the objective prong, the plaintiff must establish "that an official 'denied [the patient] treatment needed to remedy a [sufficiently] serious medical condition.'" Mills v. Fenger, 216 Fed. Appx. 7, 10 (2d Cir. 2006) (quoting Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996)).  In order to demonstrate that the alleged deprivation of medical treatment is, "in objective terms, 'sufficiently serious,'" the prisoner "must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'"

Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (quoting

Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998)).

Under the subjective prong of the analysis, the

plaintiff must prove that that the official denied treatment

with a "sufficiently culpable state of mind." Hathaway v.

Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). This requires that the

prison official "'knows of and disregards an excessive risk to

inmate health or safety; the official must both be aware of

facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the

inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837

(1994)); accord Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir.

2009). See also Allen v. Wende, --- F. Supp. 2d ----, No. 09-

CV-6203L, 2009 WL 4023212, at *2 (W.D.N.Y. Nov. 19, 2009) ("In

other words, it is not enough that the defendant objectively

*should* have perceived the risk to the inmate's health or safety;

he must have *actually* been aware of, but deliberately ignored

that risk." (emphasis in original)(citing Caiozzo, 581 F.3d at

69-70)); Stevens v. Goord, 535 F. Supp. 2d 373, 385 (S.D.N.Y.

2008) ("A plaintiff must establish a 'conscious disregard of a

substantial risk of serious harm.'" (quoting Cuoco v. Moritsugu,

222 F.3d 99 (2d Cir. 2000))). To demonstrate this prong of the

deliberate indifference standard, officials must "'intentionally

deny[] or delay[] access to medical care or intentionally

interfere with the treatment once prescribed.'" Demata v. New York State Corr. Dep't of Health Servs., No. 99-CV-0066, 1999 U.S. App. LEXIS 22955, at *4 (2d Cir. Sept. 17, 1999) (quoting Estelle, 429 U.S. at 104-05).

It is well-established that mere disagreements with the quality of medical care do not state an Eighth Amendment claim. See, e.g., Estelle, 429 U.S. at 106-07; Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); Culp v. Koenigsmann, No. 99-CV-9557, 2000 WL 995495, at *7 (S.D.N.Y. July 19, 2000) (collecting cases). Nor does a delay in medical treatment necessarily invoke the Eighth Amendment. See, e.g., Morrison v. Mamis, No. 08-CV-4302, 2008 WL 5451639, at *7 n.19 (S.D.N.Y. Dec. 18, 2008) (Report and Recommendation)(collecting cases). To the contrary, the Second Circuit has reserved classifying delays in providing necessary medical care as "deliberately indifferent" for "cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for over two years." Demata, 1999 U.S. App. LEXIS 22955, at *5 (internal citations omitted).

15

The Second Circuit addressed facts similar to those presented here in Demata v. New York State Corr. Dep't of Health Servs., 1999 U.S. App. LEXIS 22955, at *4.[3]  In that case, the plaintiff alleged that defendant prison officials failed to respond to numerous medical complaints, including injuries to both knees, an ulcer, and hemorrhoids.  Id. at *2.  Of particular significance in Demata is the plaintiff's allegations regarding the treatment he received for a knee injury sustained while incarcerated.  Id. at *2-3.  Demata reported his knee injury to the nurse on duty the day he sustained it in February 1994, and continued to complain of related difficulty for months thereafter.  Id.  In September 1994, an MRI was performed and the knee was examined by an orthopedist.  Id. at *3.  The orthopedist prescribed physical therapy, an injection, and knee supports.  Id.  Demata had several more orthopedic consultations.  Id.  Between the fall of 1995 and May 1996, Demata complained of knee pain and was given Tylenol.  Id.  His complaints became more frequent in May 1996 and physical therapy in the form of strengthening exercises was prescribed.  Id.  Additional consultations and MRIs followed, and in March 1997, three years after sustaining the injury, Demata had knee surgery.  Id.

---

[3]Although Demata is a summary order, the court finds the Second Circuit's analysis persuasive.

In affirming the district court's grant of summary judgment in favor of the defendant nurse and doctors, the _Demata_ court stated that "strengthening exercises are in fact a form of medical care," _id._ at *7, and the fact that the plaintiff "fe[lt] something more should have been done to treat his injuries is not a sufficient basis for a deliberate indifference claim," _id._ at *5-6.  Further, the _Demata_ court found that plaintiff's "mere disagreement with [strengthening exercises as a] form of treatment does not establish deliberate indifference."  _Id._ at *7.

The _Demata_ court, however, vacated the district court's grant of summary judgment with regard to two of Demata's Eighth Amendment claims against the Medical Director of the prison.  _Id._ at *8.  The _Demata_ court found that the factual record was insufficient to determine whether the medical director, who defended the denial of physical therapy on the basis that the treatment was unavailable, knew of the physical therapy recommendation and any harmful consequences of failing to provide it.  _Id._ at *13-15.  Additionally, the court remanded to develop the record as to whether the fact that the plaintiff was recommended and scheduled for a colonoscopy that he never received while under the Director's care constituted an Eighth Amendment violation because a "[f]ailure to heed a physician's

recommendation regarding treatment may in some circumstances constitute deliberate indifference." Id. at *16.

## B. Application of Eighth Amendment Analysis to Dr. Thebaud

Plaintiff alleges two theories whereby Dr. Thebaud purportedly evinced deliberate indifference to plaintiff's serious medical needs: 1) Dr. Thebaud treated plaintiff's knee injury with physical therapy instead of recommended surgery, (Doc. 29, Am. Compl. at 5); and 2) Dr. Thebaud ignored orthopedists' orders by failing to implement physical therapy prescribed for plaintiff, (Pl.'s Mem. of Law in Opp'n at 1-2; 13-16.) As defendant points out, plaintiff raises the second theory of deliberate indifference for the first time in his opposition to defendant's motion for summary judgment. (Doc. No. 134, Def.'s Reply Mem. in Supp. at 2-3.)

Plaintiff has failed to come forward with evidence from which a reasonable juror could conclude that Dr. Thebaud deliberately disregarded an excessive risk to plaintiff's health by intentionally denying or delaying medical care to plaintiff, or interfering with treatment once prescribed to plaintiff. The undisputed material facts, as reflected in the plaintiff's medical records, establish that, during the approximately eighteen-months between plaintiff sustaining his injury and being transferred from Arthur Kill to the Marcy facility, Dr.

Thebaud prescribed physical therapy, strengthening exercises, Tylenol, restricted activity when requested by plaintiff, and referred plaintiff for orthopedic and physical therapy consults and for an x-ray, MRI and other lab tests. It does not appear that Dr. Thebaud acted with a lack of due care, let alone a conscious disregard of a substantial risk of serious harm. Thus, Plaintiff has not alleged sufficient facts to meet the subjective prong of the two-part deliberate indifference test.

Plaintiff's allegation that Dr. Thebaud treated his knee injury with physical therapy instead of surgery does not change this conclusion, particularly where the medical records during Dr. Thebaud's treatment of plaintiff do not recommend surgery and plaintiff provides only vague details as to which doctor provided the surgical recommendation and when such recommendation was given. (See Doc. No. 109, Aff. of Simon Goris at ¶ 13 ("At one if these [orthopaedic] consultations, the individual I spoke with indicated that I needed surgery for my knee."); Am. Compl. at 5 ("The specialist at Staten Island University Hospital requested and recommended surgery.").) As defendant argues, and the court notes, the medical records flatly contradict any assertion by plaintiff that one of the orthopedic consultants or specialists who plaintiff saw while he was at Arthur Kill recommended that plaintiff have knee surgery, (Aff. of Simon Goris at ¶ 13; Am. Compl. at 5), or that any such

recommendation was conveyed to Dr. Thebaud, (Am. Compl. at 5.)
Furthermore, Dr. Thebaud testified that he had to defer to the
orthopedists' treatment recommendations and could not recommend
treatment on his own. (See, e.g., Thebaud Dep. at 67 ("[T]he
orthopedist is the one who is the specialist. He's the one who
has to decide what treatment to do for that patient."); id. at
114-115 ("I cannot recommend to the orthopedist what to do . . .
The orthopedist must decide. . . . It's for the orthopedist to
recommend the course of therapy for the patient."; id. at 127
("I cannot recommend. The orthopedist had to recommend the
treatment of that patient.").)

 Assuming for the purposes of this motion that
plaintiff did receive such a recommendation, that this
recommendation was conveyed to Dr. Thebaud and that Dr. Thebaud
had the power to choose which course of therapy to prescribe,
Dr. Thebaud's decision to treat plaintiff with physical therapy,
as undisputedly recommended by numerous orthopedic specialists,
instead of with surgery, is at most "a difference in opinion as
to [plaintiff's] medical treatment rather than any deliberate
indifference to his medical needs." Culp, 2000 WL 995495, at
*9. In fact, plaintiff's own expert states that he would have
recommended "more physical therapy and/or recommend surgical
intervention" if a patient "had persistent complaints of pain
after physical therapy." (Pearle Report at 4 (emphasis added).)

Thus, a "mere disagreement in treatment does not amount to an Eight Amendment violation." Culp, 2000 WL 995495, at *9 (rejecting deliberate indifference claim based on the fact that one doctor recommended arthroscopic surgery for knee injury, while another doctor concluded that surgery was not warranted until more conservative measures like physical therapy had been tried and failed); see also Demata, 1999 U.S. App. LEXIS 22955, at *5 (rejecting deliberate indifference claim, reasoning that the fact that the plaintiff "fe[lt] something more [than physical therapy] should have been done to treat his [knee] injuries is not a sufficient basis for a deliberate indifference claim").

Likewise, plaintiff's recently raised assertion that Dr. Thebaud ignored orthopedists' orders by failing to implement physical therapy prescribed for plaintiff does not raise facts sufficient to show that Dr. Thebaud's behavior meets the subjective prong of the deliberate indifference test. Putting aside for the moment that plaintiff improperly raised his second theory of deliberate indifference for the first time in his opposition for summary judgment, the medical records establish that Dr. Thebaud "heed[ed] a physician's recommendations regarding treatment," Demata, 1999 U.S. App. LEXIS 22955, at *16, by referring plaintiff to physical therapy and additional orthopedic consultations, per the orthopedists' orders.

Plaintiff's expert admits that Dr. Thebaud provided "appropriate care" from February 2003 until February 2004. (Pearle Report at 4.) Thereafter, it is undisputed from the medical records that in March 2004, plaintiff reported improvement to his knee and Dr. Thebaud referred plaintiff for more physical therapy; that plaintiff attended physical therapy in April 2004; that plaintiff requested physical therapy to a nurse in June 2004; and that Dr. Thebaud referred plaintiff for an orthopedic consultation on July 19, 2004, the first time the plaintiff had complained of knee pain to Dr. Thebaud since March of that year. (Consultation Reports at D156; Ambulatory Health Records at D044-D048.) Even assuming for purposes of this motion that between March 1, 2004 and August 13, 2004, Dr. Thebaud failed to refer plaintiff to as many physical therapy sessions as plaintiff's expert would have scheduled per the orthopedic clinic's "prn" recommendation, any delay in Dr. Thebaud's physical therapy referrals is insufficient for a finding of subjective intent. As in Demata, plaintiff has not alleged, nor is there anything in the record to show, that plaintiff's knee injury was "fast-degenerating" or "life threatening," that Dr. Thebaud delayed treatment in order to punish plaintiff or that any delay in treatment rose to the egregious level identified in Hathaway v. Coughlin, 841 F.2d 48, 50-51 (2d Cir. 1988). In fact, uncontroverted medical records show that every time

plaintiff complained of knee pain to Dr. Thebaud, Dr. Thebaud promptly referred him to an orthopedist and followed the orthopedists' treatment recommendations. Plaintiff's unsupported, conclusory allegations otherwise are insufficient to avoid summary judgment.

Thus, construing the facts in the light most favorable to the plaintiff, the court finds that Dr. Thebaud was not deliberately indifferent to plaintiff's medical needs within the meaning of the Eighth Amendment, and summary judgment is appropriate. See, e.g., Culp, 2000 WL 995495, at *9-10; Demata, 1999 U.S. App. LEXIS 22955 at *4-6. As plaintiff cannot establish that the Dr. Thebaud acted with the requisite culpable mental state, the court need not address whether plaintiff's injury constitutes a "serious medical condition" for purposes of the Eighth Amendment.

## III.  **Qualified Immunity**

Furthermore, even if Dr. Thebaud's conduct rose to the level of a constitutional violation, he would be entitled to qualified immunity and defendant's motion for summary judgment is alternatively granted on this basis. "The qualified immunity doctrine protects a governmental official performing discretionary functions from liability to the extent his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known.'" Eng v. Coughlin, 858 F.2d 889, 895 (2d. Cir. 1988)

(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The

inquiry turns on "the 'objective legal reasonableness of the

action, assessed in light of the legal rules that were clearly

established at the time it was taken.'" Pearson v. Callahan,

129 S. Ct. 808, 822 (2009) (quoting Wilson v. Layne, 526 U.S.

603, 614 (1999)). When an official "reasonably believes that

his or her conduct complies with the law," qualified immunity

shields him or her from liability. Id. at 823.

        The general constitutional right of a prisoner to be

free from deliberate indifference to his or her serious medical

needs was clearly established at the time of the events giving

rise to this action. See Estelle, 429 U.S. at 104-05. The

Supreme Court has never specifically addressed whether the

conduct evidenced in the undisputed facts in this record

constitutes deliberate indifference. Nevertheless, the court

finds, in light of the Second Circuit's summary order in Demata,

1999 U.S. App. LEXIS 22955, discussed at length above, that Dr.

Thebaud reasonably believed that his conduct complied with the

law. Pearson, 129 S. Ct. at 823 (the unlawfulness of the

officers' conduct in entering the plaintiff's home without a

warrant was not clearly established because lower court

decisions at the time held that similar conduct was

constitutional). As a result, if any of Dr. Thebaud's conduct,

as established in the current record, amounted to a constitutional violation, the unlawfulness of that conduct was not clearly established.  Therefore, Dr. Thebaud is entitled to qualified immunity and summary judgment is granted in defendant's favor.

## CONCLUSION

Defendant's motion for summary judgment is granted because there exists no genuine issue of material fact as to whether Dr. Thebaud acted with deliberate indifference. Alternatively, Dr. Thebaud is entitled to qualified immunity. The Clerk of the Court is directed to enter judgment in favor of defendant Administrator of Suffolk County as Administrator of the Estate of Dr. Francis Thebaud and to close the case.


**SO ORDERED.**


Dated: January 26, 2010
       Brooklyn, New York


_____    /s/_____  _____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York